In the Matter of the Accounting of THEODORE S. WATSON, as Surviving Cotrustee, and E. LAURENCE WHITE, JR., et al., as Executors of EDWARD L. WHITE, Deceased Cotrustee, under an Agreement of Trust Dated September 5, 1935, Made by EDWARD L. WHITE. THEODORE S. WATSON et al., Appellants-Respondents; JAY SLONIM, as Guardian ad Litem for E. LAURENCE WHITE, III, and Another, Infants, Respondent-Appellant.

First Department, February 17, 1972.

*John W. Burke* of counsel (*Bernard M. Althoff* with him on the brief; *Davies, Hardy, Ives & Lawther,* attorneys), for appellants-respondents.

*Jay Slonim,* guardian ad litem, in person.

McGIVERN, J. P. This appeal assays the appointment by Special Term of a Referee to hear and report in respect of objections by a guardian of contingent remaindermen to the account of

cotrustees of an *inter vivos* trust (Special Term, New York County, Supreme Court, SAYPOL, J.). Petitioners, the sole surviving trustee and the representatives of the deceased cotrustee, appeal from the denial of a motion for summary judgment by them, seeking a dismissal of the objections by the guardian. The respondent guardian cross-appeals from the order to the extent that the order denies summary judgment surcharging the surviving cotrustee, Theodore Stout Watson.

In effect, what we have before us is a record, the tantamount of a trial, for that is what summary judgment represents. (*Besdin v. Casciano*, 206 N. Y. S. 2d 269.) And it accords with our anticipation, as previously expressed in *Matter of Watson* (35 A D 2d 933). Thus, initially, we fail to see how a Referee would add a cubit to our knowledge of the case; being in summary judgment, the parties were under compulsion to make a full disclosure of all known and relevant facts. (*Besdin v. Casciano, supra; Dodwell & Co. v. Silverman*, 234 App. Div. 362; and *Georgia-Pacific Corp. v. Fort Pit Supply*, 34 A D 2d 742.) An affidavit by an attorney, in this case, the guardian, without personal knowledge of the facts, is of no probative value and avails little, even allowing for the unique office of a guardian ad litem. (*Barnet v. Horwitz*, 278 App. Div. 700; *Cohen v. Pannia*, 7 A D 2d 886.)

On the submission before us, we feel there simply is not sufficient ground for holding the surviving trustee answerable for improvidence or negligence, and further: if he had been so held, we feel we would have had to set such a finding aside as against the plain weight of the evidence.

The trust indenture itself gave him unfettered power in the investment of trust funds. Precisely, paragraph 4 gave him " absolute and uncontrolled discretion ". And, respecting his responsibilities, the trust provided: " Trustees shall be relieved from all responsibility or liability for any loss to the trust estate *which may occur because of errors of judgment,* and shall be liable only for failure to act in good faith or with reasonable care." (Emphasis supplied.)

The trustee, Theodore Stout Watson, now an elderly gentleman of some eighty odd years, had previously been a friend and partner of the grantor, Edward Laurence White, for over half a century. The trust had been created in 1935 by White, and its principal asset was 235 shares of Watite Corporation, a company formed by both men in 1926 as a vehicle for their investments, they being partners in an investment firm called Watson and White. White died in 1968, and Watson exchanged the

shares of the closely held investment company (Watite) for marketable securities owned by that company, thereby incurring a tax at capital gains rates. But preceding that event was a discussion with the executors of Mr. White's will and a formal letter opinion by tax counsel, making the executor fully aware of the tax effect of redemption of the Watite shares by the trust, by the White Estate, or by a combination of both. Indeed, the letter gave the shareholders of the Watite company, the trust and the children of the deceased White a choice to retain their shares, if they preferred. The minutes of the stockholders' meeting, at which the redemption was approved, reveal the presence of the lawyer who wrote the opinion letter, and the consent of the White children, then the only adults who could receive income from the trusts.

Notwithstanding, the guardian assails the transaction because of an alleged ulterior purpose on the part of Watson, and for his failure to secure independent tax counsel. The guardian's sole authority for impugning Watson's motive is a conversation with a Miss Norma Whiteford, faithful confidante and business associate of both men. But, firstly, this is hearsay, and secondly, the whole import of the conversation is categorically denied by Miss Whiteford.

As for the failure to secure independent advice, he, the trustee, had been an investment banker all his life, and he explains his decision with a vast knowledgeability, in his affidavit, to the effect that since the estate of the deceased cotrustee was forced to liquidate its holdings to pay estate taxes, he, as the surviving cotrustee, was faced with the following problem: if he retained the 100 shares of Watite Corporation then held by the trust, he, individually and as trustee of this trust and a separate trust for his children, would have voting control of Watite Corporation; he could elect the board of directors and, therefore, maintain control over the trust investments and corporate expenses. However, such a situation would immediately present a conflict of interest, for the investment policy of Watite Corporation best suited to his trust might, or might not, be the policy best suited for the cotrustee, individually, or for the trust for his children. Accordingly, he explains, even if the cotrustee had planned to stay on as trustee, which he clearly would and could not do at the advanced age of 80 years, a prudent trustee would, if the opportunity were available, as it was here, liquidate the trust holdings in the Watite Corporation. Which is exactly what he did. This represented pure business judgment. Even if he had sought expert advice, he was free to reject it.

A reference would only be a playback of the foregoing, as set forth in sworn affidavits, against which, the guardian presents hearsay and unsupported speculation. Thus, on this and the preceding submission (35 A D 2d 933), we conclude there is not the faintest penumbra of a chance of ever holding this trustee on the animadversions of the guardian, particularly in the light of the sweeping and carte blanche language of the trust instrument and the uninhibited powers therein granted the trustee.

Lastly, we perceive a basic incongruity in attempting to tax this trustee with lack of care, when the trust corpus has experienced an aggrandizement " four times greater than its original inventory value, resulting in roughly a 300% gain ", according to petitioners' attorney. Even the guardian states the Watite shares became increasingly valuable " seven times more valuable, ultimately ". As for such a trustee, we venture the observation: " May his tribe increase ! ".

The fact that the guardian insists there is no question of fact warranting a reference and that he is entitled to summary judgment, re-enforces our view that there is no valid basis for further factual exploration by way of a reference, and that all of the pertinent facts are now before us. On those facts, we find the position of the guardian untenable.

We appreciate the commendable zeal of the guardian and the not unnatural hesitancy of the learned Justice at Special Term to dismiss the objections, but in our considered judgment, the concern of both is overdrawn. We do not speak critically; but we modify, on the law, the order appealed from and grant the petitioners' motion for summary judgment, dismissing the objections filed by the guardian ad litem, and dismissing the cross appeal, without costs.

KUPFERMAN, J. (concurring). I concur in the result. However, I cannot agree that an affidavit by an attorney " is of no probative value and avails little ". (See Merker v. Merker, 8 A D 2d 706 [1st Dept., 1959].) In many situations, the facts themselves avail little without a logical rendering and interpretation, which is a lawyer's function. The guardian here has presented an analytical forthright interpretation. It is simply that on an over-all basis, and in view of the broad discretion given the trustees by the indenture, that we grant petitioners' motion for summary judgment and dismiss the objections.

MARKEWICH, NUNEZ and MURPHY, JJ., concur with McGIVERN, J. P.; KUPFERMAN, J., concurs in an opinion.

Order, Supreme Court, New York County, entered on September 13, 1971, unanimously modified, on the law, to grant petition-

ers' motion for summary judgment, dismissing the objections filed by the guardian ad litem, to dismiss said objections, and, as so modified, the order is affirmed, without costs and without disbursements, and the cross appeal dismissed.